UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| ERIC C. DETERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 11-02-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BRUCE K. DAVIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Eric C. Deters' Motion for a Preliminary Injunction.  [Record No. 6]  On January 14, 2011, the Court held a hearing on the matter and heard argument from each party.  Being sufficiently advised, and for the following reasons, the Court will deny Deters' motion.

## I.    Background

Plaintiff Deters is in the midst of a disciplinary proceeding before the Kentucky Bar Association.  While such proceedings are typically conducted privately, Deters has chosen to bring the nature and subject of his disciplinary problems public through the filing of his Complaint.  He has not requested that any part of the record be placed under seal.

Deters is currently under charge for six different violations.  [Record No. 1, ex. 5, p. 1] Four other disciplinary investigations against Deters are currently pending:  two awaiting

action from the Kentucky Courts and two awaiting submission to the Inquiry Commission. [Record No. 1, ex. 25, p. 4]

Frank Doheny, Jr. served as the trial commissioner for Deters' disciplinary proceedings. On June 21 and 22, Commissioner Doheny held a hearing on the matter. The Bar Counsel presented evidence of the infractions and Deters was permitted to present his own evidence. During the proceedings, two pieces of information came to light which Deters now claims are a basis for the recusal of the trial commissioner.

First, information was provided that Linda Ash, a law partner of Commissioner Doheny, took over representation of a client after the client had fired Deters and filed a bar complaint against him. [Record No. 1, p. 8] Ash completed the matter and charged the clients a fee of $25,000. [*Id.*] Deters claims that Commissioner Doheny is now biased as a result of his indirect receipt of a portion of that fee from clients who are now acting as witnesses in the bar disciplinary hearing. [*Id.*]

Ms. Ash did not represent the clients at the hearing or in the bar matter. [Record No. 1, ex. 6, p. 20] At the disciplinary hearing, when Ms. Ash's name came up as the counsel that took over the case after Deters was fired, Commissioner Doheny disclosed that Ash was a partner in his firm and asked the parties whether it presented a problem to either of them. [*See* Record No. 1, ex. 6, p. 18] Mr. Deters responded: "You know, I don't, as I'm sitting here right now, it's not an issue because I hate to say this, but I think after I testify I'm going to be found innocent. So I'm not worried about it. . . . I don't have a problem with it." [Record No. 1, ex. 6, p. 18–19] When pressed, Deters stated again "It's okay, it's alright,"

and "I'm not worried about it." [Record No. 1, ex. 6, p. 19]  However, Deters now argues that the conflict is blatantly obvious and that it is the equivalent of the Judge's law partner representing the plaintiffs in a matter before him.  [Record No. 1, p. 8]  Deters argues the conflict constitutes real bias and creates an appearance of impropriety.  [*Id.*]

Second, during the disciplinary hearing Commissioner Doheny indicated that he had spoken with one of the witnesses (Ruth Baxter) on a prior occasion.  [Record No. 1, ex. 5, p. 8]  When Baxter was called to testify, Commissioner Doheny greeted her as follows:

> Good morning Mrs. Baxter, I'm Frank Doheny.  I'm the hearing officer on this case and you and I have, at least, talked on the phone in the past.  I don't know if we've ever actually met or not.  But in any event, would you please raise your right hand.

[Record No. 1, ex. 5, p. 8]  Deters alleges that this comment revealed an apparent conflict for the trial commissioner.  Deters also asserts that a number of other comments Commissioner Doheny made during the proceeding were adverse to his position and revealed bias and conflict of interest.  [*See* Record No. 1, ex. 5, pp. 1–20]

On November 11, 2010, Deters submitted a motion for recusal.  [*Id.*]  In his motion, he argued the above points and asked that Commissioner Doheny recuse himself from the proceeding.  [*Id.*]  Bar Counsel submitted a response on November 15, 2010 [Record No. 1, ex. 6, pp. 1–5] and Deters submitted a reply [Record No. 1, ex. 6, pp. 7–13].  On December 3, 2010, Commissioner Doheny issued his ruling denying Deters' motion.  [Record No. 1, ex. 6, pp. 15–23]  Commissioner Doheny found the motion "flimsy at best," but nevertheless provided full justification for his decision against recusal.  [*Id.*]

Deters attempted to file affidavits requesting Commissioner Doheny's recusal to the Disciplinary Clerk of the Kentucky Bar Association [Record No. 1, p. 10] and the Clerk of the Kentucky Supreme Court [*Id.*, p. 12]. Both declined to file the affidavit citing specific rules of procedure that govern the timing and filing of motions. [*Id.*, pp, 10, 12] On December 27, 2010, Deters sent an affidavit directly to the Chief Justice of the Supreme Court. [*Id.*, p. 12] The Chief Justice signed a "Filing of Unauthorized Pleadings" and the affidavit was returned to Deters. [*Id.,* pp. 12, 13] There is no indication or evidence suggesting that either Defendant Susan Greenwell, Disciplinary Clerk for the Kentucky Bar Association, Defendant Susan Stokley Clary, Clerk of the Supreme Court of Kentucky, or Chief Justice John D. Minton, Jr. of the Supreme Court of Kentucky acted outside the rules in declining to accept Deters' materials for filing.

On January 6, 2011, Deters filed a complaint in this Court. [Record No. 1] In his complaint, he first outlines the history of his case and requests that the Court review Commissioner Doheny's decision denying recusal. [*Id.*] He then alleges a claim under 42 U.S.C. § 1983 asserting that the ongoing proceeding violates his rights under the First and Fourteenth Amendments to the United States Constitution. [*Id.*, p. 13–14] Deters also requests injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. [*Id.*, p. 22] He contends that the recusal issue "must be heard" and that he is entitled to either a preliminary injunction or restraining order to prevent Commissioner Doheny from issuing his recommendation in the case. [*Id.*, p. 13–14] On January 12, 2011, Deters filed a separate motion for a preliminary injunction. [Record No. 6]

## II.   Analysis

### A.   The Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In deciding whether the circumstances demand a preliminary injunction, the Court must "weigh carefully the interests on both sides." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). The Sixth Circuit has developed a well-settled, four-factor test to direct the Court's inquiry. *See, e.g., Int'l Longshoremen's Ass'n v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991), *cert. denied,* 112 S. Ct. 63 (1991). The Court should consider: (1) whether there is a strong or substantial likelihood of success on the merits; (2) whether an injunction is necessary to prevent irreparable harm to the plaintiff; (3) whether granting the injunction will cause harm to others, including the defendant; and (4) whether the public interest favors granting the injunction. *Id.*

There is no rigid formality required in applying these factors and they need not be given equal weight, they are meant to guide the Court in exercising its discretion. *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). However, of all the factors, courts generally consider the plaintiff's likelihood of success on the merits to be most important. *Lancor v. Lebanon Housing Authority*, 760 F.2d 361, 362 (1st Cir. 1985); *Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663, 671 (E.D. Mich. 2010).

The plaintiff bears the burden of proving that an injunction is proper. *See Overstreet*, 305 F.3d at 573.

**B.     Likelihood of Success on the Merits**

In the present case, the first — and most important — question is whether Deters is likely to ultimately succeed with the claims that have been asserted.  To satisfy his burden on this element, Deters must show he has "a strong or substantial likelihood of success on the merits." *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  This is a much more stringent standard than applied in the Kentucky courts. *See Norsworthy v. Ky. Bd. of Med. Licensure*, No. 2008-0918, 2009 Ky. LEXIS 94, at *11 (May 21, 2009) ("To support a temporary injunction, one must show that a substantial question exists that tends to create a 'substantial possibility' that the Appellant will ultimately prevail on the merits." (citing *Price v. Paintsville Tourism Comm'n*,  261 S.W.3d 482, 484 (Ky. 2008))).  Under state law, a party seeking injunctive relief need only show the existence of a "substantial question" and a "possibility" of success. *Id.*   However, in this Court, Deters must demonstrate that he has a strong likelihood of succeeding on the merits of his case. *Mason County Med. Ass'n*, 563 F.2d at 261; *see also Taylor Novelty, Inc. v. Taylor*, 816 F.2d 682 (6th Cir. 1987) (holding that a complaint brought in federal court, even to the extent it is based on state law, is subject to the federal preliminary injunction standard).  Having reviewed the pleadings, the Court concludes that Deters' complaint shows very little likelihood of success on the merits; and that conclusion is charitable to Deters.

Deters' complaint essentially alleges four different issues. First, he asserts that Commissioner Doheny's recusal decision was improper and, therefore, the issue "must be heard" before the proceeding should be permitted to continue. In other words, he seeks review of Commissioner Doheny's decision. However, this Court lacks jurisdiction to do so under the *Rooker-Feldman* doctrine. Second, Deters alleges a cause of action under § 1983. He argues that the procedure of the Kentucky Bar Association's disciplinary hearing violates his Fourteenth Amendment rights as an improper deprivation of procedural due process. Deters also argues that SCR 3.130(8.2) — the rule barring attorneys from making false statements about judges — is unconstitutional both facially and as applied. These claims fail because the Fourteenth Amendment and as-applied First Amendment challenge are barred by the *Younger* abstention doctrine. In essence, Deters improperly seeks to have this Court interject itself in an ongoing state-court proceeding. Further, the facial challenge to SCR 3.130(8.2) is totally lacking in merit because the rule only prohibits untrue speech, which is not entitled to constitutional protection. In short, not one aspect of Deters' complaint exhibits even a remote likelihood of success.

### 1.  Subject Matter Jurisdiction and the *Rooker-Feldman* Doctrine

To begin, it is unlikely that this Court has subject matter jurisdiction over the central claim in Deters' complaint — the allegedly improper decision by Commissioner Doheny not to recuse from Deters' disciplinary proceeding.[1]  The *Rooker-Feldman* doctrine holds that

---

1  The Court recognizes that, under typical circumstances, a finding that the Court lacked subject matter jurisdiction over a particular claim would preclude it altogether from analyzing a preliminary injunction based

federal district courts should not sit in direct review of state court decisions and orders. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Deters is asking the Court to sit as an appellate court and review an order entered in a state-court proceeding: Commissioner Doheny's order denying Deters' motion to recuse. This Court lacks jurisdiction to do so. However, to avoid the plain application of this rule, Deters argues that the doctrine should not apply because "[t]here is no parallel State proceeding, nor any decision or order of a State Court." [Record No. 1, p. 14] In other words, he contends that, because the order was entered in a bar disciplinary proceeding rather than a formal state court proceeding, the *Rooker-Feldman* rule should not apply. His argument is wholly without merit and contradicted by the entirety of case law on the subject.

Courts have universally considered state bar disciplinary proceedings as "state-court proceedings" in applying the *Rooker-Feldman* doctrine.[2] In *Mosby*, the Eighth Circuit

---

on that claim. *See Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1399 (9th Cir. 1990) ("The court properly concluded that it lacked subject matter jurisdiction to consider the merits of the case or to issue a preliminary injunction."); *Feinstein v. Chase Manhattan Bank*, No. 06-1512, 2006 U.S. Dist. LEXIS 16507, at *1 (E.D.N.Y. April 4, 2006) ("[T]he Court cannot consider plaintiff's request for a preliminary injunction or temporary restraining order as this Court lacks subject matter jurisdiction over this action."). However, because the Court raises the issue *sua sponte*, and Plaintiff Deters has not had an opportunity to brief the matter, the Court will address the jurisdictional issues as an aspect of whether Deters is likely to succeed on the merits of his case.

2      *See, e.g., Butler v. Wood*, 383 F. App'x 875 (11th Cir. 2010) (holding that § 1983 complaint brought by disbarred attorney against state bar and the special master who presided over his proceedings was barred by the *Rooker-Feldman* doctrine); *Drum v. Sup. Ct. of Cal.*, 262 F. App'x 783, 784 (9th Cir. 2007) (dismissing a suspended attorney's § 1983 action alleging due process violations arising out of his state bar disciplinary proceedings because it was barred by the *Rooker-Feldman* doctrine); *Bolte v. Sup. Ct. of Wis.*, 230 F. App'x 586 (7th Cir. 2007) (attorney's challenge to jurisdictional issues in his public reprimand by Wisconsin Supreme Court was barred by *Rooker-Feldman*); *Mosby v. Ligon*, 418 F.3d 927 (8th Cir. 2005) (portion of attorney's suit seeking declaration concerning bar committee's disciplinary proceedings was

explained why bar disciplinary proceedings should be considered state-court actions under this doctrine: "Because the [Disciplinary] Committee is created and appointed by the [state] Supreme Court, operates pursuant to rules promulgated by that court, and is subject to review by that court, the Committee's decision to discipline [the accused attorney] is the functional equivalent of a state-court judgment." 418 F.3d at 932 (citing *Thomas v. Kadish*, 748 F.2d 276, 281–82 (5th Cir. 1984); *Muhammed v. Ark. Supreme Court Comm. on Prof'l Conduct*, 655 F. Supp. 584, 586 (E.D. Ark. 1986)). As in *Mosby*, Kentucky's bar disciplinary committee is created and appointed by the state's supreme court. *See* Ky. Const. § 116 (establishing that the Supreme Court is responsible for governing admission to the bar and discipline of members of the bar); *Kentucky Bar Ass'n v. Shewmaker*, 842 S.W.2d 520, 521 (Ky. 1992) ("[T]he regulation and supervision of the practice of law in our court system and

---

barred by *Rooker-Feldman*); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 607–08 (9th Cir. 2005) (holding that district court lacked subject matter jurisdiction pursuant to *Rooker-Feldman* doctrine to adjudicate attorney's challenge to his state bar disciplinary proceedings); *Mosby v. Ligon*, 418 F.3d 927, 932 (8th Cir. 2005); *Hogrobrooks v. Ark. Sup. Ct. Comm. on Prof'l Conduct*, 8 F. App'x 584 (8th Cir. 2001) (under the *Rooker-Feldman* doctrine, trial court lacked subject matter jurisdiction over a challenge to state bar disciplinary proceedings; trial court did not err in imposing sanctions for filing complaint); *Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997) (under *Rooker-Feldman* doctrine, district court lacked subject matter jurisdiction over challenge to state bar disciplinary proceedings); *Sibley v. Lewis*, No. 08-243, 2008 U.S. Dist. LEXIS 113944 (N.D. Fl. July 7, 2008) (suspended attorney's habeas case, which was attempt to avoid plain application of *Rooker-Feldman* to bar proceedings, was barred); *Hawkins v. Sup. Ct.*, No. 04-1317, 2005 U.S. Dist. LEXIS 37564 (D.N.J. Mar. 30, 2006) (attorney's lawsuit against the state supreme court, the chief of the court, and other judges for various constitutional and statutory violations was dismissed under the *Rooker-Feldman* doctrine because it was nothing more than a transparent attempt to get the federal court to declare the state judges' prior rulings somehow defective); *Tindall v. The Florida Bar*, No. 97-387, 1997 U.S. Dist. LEXIS 17399 (M.D. Fl. Oct. 14, 1997) (attorney's § 1983 action alleging that state judges and bar association were violating his constitutional rights in their handling of disciplinary action against him was dismissed for lack of subject matter jurisdiction under Rooker-Feldman doctrine); *see also Motley v. Va. State Bar*, 403 F. Supp. 2d 468, 470–71 (E.D. Va. 2005) (Suit against Virginia State Bar and Supreme Court of Virginia challenging jurisdiction over disciplinary proceedings barred by *Rooker-Feldman*).

the admission and discipline of members of the bar has long been a function of the judicial branch of government. The Kentucky Bar Association is the agency through which the Supreme Court administers its supervision and discipline of the members of the bar."). In fact, Deters admits that "[t]he discipline process of the Kentucky Bar Association is a function of the Supreme Court" [Record No. 1, p. 10] and argues that the Trial Commissioner should be subject to Kentucky's Code of Judicial Conduct [*Id.*]. The disciplinary committee operates pursuant to rules established by the Kentucky Supreme Court, *see* SCR 3.010 *et seq.*, and is subject to the review of that court, *see* SCR 3.370(8).

For the foregoing reasons, the Court concludes that the state bar disciplinary proceeding at issue in this case is a state-court proceeding under the *Rooker-Feldman* doctrine. Accordingly, orders entered in that proceeding are not subject to review by this Court. The Court lacks jurisdiction to reconsider Commissioner Doheny's order denying recusal. Likewise, Chief Justice Minton's order rejecting the filing of Deters' affidavit is a state-court order which cannot be reviewed by this Court.

Deters attempts to avoid this rule by framing his challenge as a § 1983 action. However, his framing does not change the analysis because *Rooker-Feldman* prevents both direct review of state-court orders and any constitutional issues that are "inextricably intertwined" with those decisions. *See Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492–93 (6th Cir. 2001); *see also Butler v. Wood*, 383 F. App'x 875, 877 (11th Cir. 2010) ("To the extent Butler couches his complaint in terms of independent constitutional claims against defendants, those federal claims were inextricably intertwined with the Georgia

Supreme Court's disbarment order and, thus, still fell within the confines of the *Rooker-Feldman* jurisdictional bar.").  Justice Marshall explained the rule as follows:

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).  In the present case, it would be impossible for the Court to conclude that Deters' due process was violated without therein deciding the validity of Commissioner Doheny's decision.  In view of this rule, the Fourteenth Amendment due process concerns that arise directly from Commissioner Doheny's recusal decision are inextricably intertwined with that decision, and the Court is barred from considering them.

Additionally, any arguments Deters may make that the process and rules governing the recusal decision violate his Fourteenth Amendment right to procedural due process would likewise be barred.  In *Feldman*, the plaintiff attempted to challenge the rules and regulations governing bar admission.  *Feldman*, 460 U.S. at 468.  "The Court carefully distinguished between 'general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings' — for which there is jurisdiction in the lower federal courts — and 'challenges to state-court decisions in particular cases arising out of judicial proceedings,' — for which there is not." *Schneider v. Colegio de Abogados de Puerto Rico*, 917 F.2d 620, 628 (1st Cir.

1990) (quoting *Feldman*, 460 U.S. at 486). Were Deters not engaged in state bar disciplinary proceedings involving these same rules, *Feldman* might well permit him to challenge their constitutional validity. *See Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004) ("*Rooker-Feldman* does not insulate from federal challenge administrative rulings standing alone."). However, because Deters is only challenging rules and policies insomuch as he is engaged in disciplinary proceedings and those rules and policies informed a judicial order in that proceeding, his challenge is barred by the *Rooker-Feldman* doctrine.

However, the *Rooker-Feldman* doctrine does not bar the entire complaint. The doctrine only bars review of actual decisions and orders; it does not apply to parallel complaints or litigation. *Exxon Mobil v. Saudi Basic Industries, Corp.*, 544 U.S. 280 (2005). The only parts of Deters' complaint that seek review of an order are his challenges to Commissioner Doheny's recusal decision[3] and Chief Justice Minton's order denying the filing of his affidavit. The recusal decision is set out in a written order entered on December 2, 2010. [Record No. 1, ex. 6, pg. 16–22] Likewise, Chief Justice Minton's decision is contained in an order dated December 28, 2010. [Record No. 1, p. 12] The Sixth Circuit has plainly stated that the *Rooker-Feldman* doctrine applies to interlocutory orders in the same way as it would to a final judgment. *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 462 (6th Cir. 2003) ("We . . . join with the majority of circuits that have concluded that the

---

3        If, before the Court has ruled on these issues, the trial commissioner were to issue his decision, the *Rooker-Feldman* doctrine would additionally bar review of that opinion and any constitutional issues that are inextricably intertwined with that state-court decision. *See Drum v. Supreme Court of Cal.*, 262 F. App'x 783, 784 (9th Cir. 2007) (citing *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)).

Rooker-Feldman doctrine does apply to interlocutory orders and to orders of lower state courts."). This Court cannot hear the appeal of a state-court decision. Because Deters' disciplinary proceeding is a state-court proceeding and both Commissioner Doheny's recusal decision and Chief Justice Minton's decision to reject Deters' filing are essentially interlocutory orders, his challenge to these decisions is barred by the *Rooker-Feldman* doctrine. Likewise, the doctrine bars the Court from analyzing the Fourteenth Amendment issues that are inextricably intertwined with those decisions.

## 2. *Younger/Middlesex* Abstention

In addition to the jurisdictional issues which bar review of central parts of the complaint, the Court would likely be required to abstain from considering the other constitutional issues underlying Deters' bar proceedings.[4] Both Deters' Fourteenth Amendment claim — to the extent it relies on issues beyond Commissioner Doheny's recusal[5] — and his as-applied challenge to the constitutional validity of SCR 3.130 (8.2)[6]

---

4    Again, the Court recognizes that it is somewhat unusual to find that abstention is required but continue to analyze whether to enjoin a state-court decision from issuing. However, because of the procedural stance of this case, the issue has not been fully briefed and Deters has not had an opportunity to respond. As such, the Court's likely abstention determination factors into whether Deters has shown a likelihood of success on the merits.

5    As explained above, to the extent Deters' Fourteenth Amendment argument is a re-styling of his challenge to Commissioner Doheny's recusal decision, it is barred by *Rooker-Feldman*. To the extent it is a challenge to the Bar disciplinary procedures altogether, it would not necessarily be inextricably intertwined with that decision. It would, instead, fall under the *Younger* analysis as a constitutional challenge to an ongoing state-court proceeding. *See Johnson v. Board of Bar Overseers of Mass.*, 324 F. Supp. 2d 276, 285 (D.C. Mass. 2004).

6    Deters' as-applied challenge to SCR 3.130(8.2) is essentially a challenge to the merits of the charge against him. Deters argues: "SCR 3.130 (8.2) requires, at the cost of harsh attorney discipline from the Kentucky Bar Association, that an attorney not make a statement that is 'knowingly' false. The rule would seem to indicate that a statement could be made if it is true. However, the rule as applied to the Plaintiff

challenge the merits and procedure of his bar disciplinary proceeding. These constitutional challenges to the conduct of an ongoing state-court proceeding are barred by the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* abstention prevents federal courts from hearing civil rights tort claims brought by a person who is currently being prosecuted for a matter arising from that claim in state court. *Id.* In fact, the Supreme Court has applied *Younger* in a case almost precisely on point: *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).

In *Middlesex*, the Court granted certiorari to determine "whether a federal court should abstain from considering a challenge to the constitutionality of disciplinary rules that are the subject of pending state disciplinary proceedings within the jurisdiction of the New Jersey Supreme Court." *Id.* at 425. The Court in *Middlesex* began its analysis by noting that *Younger* and its progeny espouse a strong federal policy against interfering with pending state judicial proceedings. *See* 457 U.S. at 431. It noted that "[t]he notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States *and their institutions* are left free to perform their separate functions in their separate ways.'" *Id.* (citing *Younger*, 401 U.S. at 44)

_____

makes a prohibition against making any statement other than a complimentary or positive statement . . . no statement can be made with any hint of negativity." [Record No. 1, p. 21] In other words, because Deters cannot imagine his conduct being subject to the legitimate provisions of the rule, it must have been applied in a way that is unconstitutional. Essentially, this is an indirect attack on the merits of the underlying charge against him.

(emphasis added). "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Id.*

The Supreme Court has established a four-part test to consider whether the *Younger* abstention doctrine should apply in a proceeding such as this:

> The inquiry first asks whether "state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding." The next question is whether "the proceedings implicate important state interests; [and third,] is there an adequate opportunity in the state proceedings to raise constitutional challenges." If these criteria are met, the federal court should abstain unless there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate."

*Rose v. Utah*, No. 10-4000, 2010 U.S. App. LEXIS 21779, at *10–13 (10th Cir. Oct. 22, 2010) (quoting *Middlesex*, 457 U.S. at 432, 435) (internal citations omitted).

Despite Deters' argument that "no proceeding is pending in State Court," [Record No. 1, p. 14], there is little question that the state bar disciplinary process constitutes an ongoing state judicial proceeding.[7]  In fact, Deters made this concession during arguments on his

_____

7    In fact, the Court has found more cases than it can easily list applying *Younger* abstention to state bar proceedings. Deters' assertion that a bar disciplinary proceeding is somehow not within the scope of *Younger* is wholly against this long string of authority. *See, e.g., Rose v. Utah*, No. 10-4000, 2010 U.S. App. LEXIS 21779 (10th Cir. Oct. 22, 2010) (district court properly abstained from consideration of an attorney's allegations against a state bar and its officials with respect to disciplinary proceedings); *Gillette v. N.D. Disciplinary Bd. Counsel*, 610 F.3d 1045 (federal court properly abstained from hearing a tribal attorney's suit seeking to prevent the Disciplinary Board of the Supreme Court of North Dakota from prosecuting a disciplinary action); *Plouffe v. Ligon*, 606 F.3d 890 (8th Cir. 2010) (the *Younger* abstention doctrine was properly applied to an attorney's action seeking to enjoin an attorney disciplinary proceeding ); *Danner v. Bd. of Prof'l Responsibility of the Tenn. Sup. Ct.*, 327 F. App'x 577 (6th Cir. 2009) ("The *Younger* doctrine counsels federal courts to abstain from enjoining certain pending state court criminal proceedings, but the doctrine also extends to ongoing administrative proceedings, such as state bar disciplinary processes." (internal citations omitted)); *Mirch v. Beesely*, 316 Fed. App'x 643 (9th Cir. 2009) ("The district court properly declined to enjoin the state bar disciplinary proceedings on the basis of the abstention principles in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)."); *Sanai v. Alexander*, 283 Fed. App'x 551 (9th Cir. 2008) (attorney's § 1983 action alleging violations in connection with Washington State

-15-

motion for injunctive relief. As previously explained, the bar disciplinary proceedings are sanctioned by the Kentucky Constitution to be administered by the judicial branch. *See* Ky. Const. § 116; *Chambers v. Stengel*, 37 S.W.3d 741, 745 (Ky. 2001) ("[T]he power to effect discipline to the members of the Kentucky bar lies solely within judicial boundaries."). They are conducted pursuant to rules established by the Kentucky Supreme Court, *see* SCR 3.010 *et seq.*, and are subject to the review of that court, *see* SCR 3.370(8). The United States Supreme Court considered these same factors in *Middlesex* and found that "[i]t is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial in nature.' As such, the proceedings are of a character to warrant federal-court deference." 457 U.S. at 433. In this case, as in *Middlesex* and others, the bar disciplinary proceedings are, without question, judicial in nature and of the character that warrant federal-court deference.

---

Bar disciplinary proceeding properly dismissed under *Younger*); *Phillips v. State Bar Court of the State Bar of Cal.*, No. 98-56142, 1999 U.S. App. LEXIS 22882 (9th Cir. Sept. 13, 1999) (action alleging California State Bar officials violated plaintiff's due process rights during disciplinary proceedings was properly dismissed under abstention doctrine); *Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725 (appellant attorney's suit against Supreme Court Disciplinary Commission properly dismissed under *Younger*); *Douglas v. N.H. Sup. Ct. Prof'l Conduct Comm.*, No. 98-1198, 1998 U.S. App. LEXIS 32715 (1st Cir. Dec. 29, 1998) (applying *Younger*, District Court properly dismissed complaint for declaratory and injunctive relief against Professional Conduct Committee); *Kozel v. Robinson*, No. 97-1536, 1997 U.S. App. LEXIS 30215 (7th Cir. Oct. 28, 1997) (suit for injunctive relief against Administrator of Attorney Registration and Disciplinary Commission, arising from attorney discipline process, properly dismissed under *Younger*); *MacDonald v. Gaskin*, No. 96-1506, 1997 U.S. App. LEXIS 12025 (6th Cir. May 20, 1997) (in an attorney's action for violation of his constitutional rights during state attorney disciplinary proceedings, the district court properly declined to exercise jurisdiction on the basis of Younger abstention); *Wightman v. Tex. Sup. Ct.*, 84 F.3d 188 (5th Cir. 1996) (dismissal of action challenging state scheme for disciplining attorneys was proper under *Younger*); *Hirsh v. Justices of the Sup. Ct. of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995); *Thompson v. The Fl. Bar*, 526 F. Supp. 2d 1264 (S.D. Fl. 2007); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 775 F. Supp. 1096 (N.D. Ohio 1991).

As the *Middlesex* Court continued, "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." 457 U.S. at 432 (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–605 (1975)). Important state interests are often indicated when the proceeding closely mirrors criminal proceedings: affording the accused a right to counsel, subpoena witnesses, and the right to confront witnesses. *Id.*; *see also* SCR 3.300 (providing the rights of the accused in a Kentucky state-bar disciplinary proceeding). The state also has vital interests in the administration of its judicial system. *Middlesex*, 457 U.S. at 432. The United States Supreme Court has recognized that states have extremely important interests in maintaining and assuring the professional conduct of the attorneys they license. *Id.* at 434. Further, in the case at hand, the Commonwealth of Kentucky's interest is clear in that the Kentucky Bar Association — which is an agency of the state supreme court — is named as a defendant, alongside the Chief Justice of the Kentucky Supreme Court. When these important state interests are present, "a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.* (citing *Moore*, 442 U.S. at 426).

The third prong asks whether the plaintiff has "adequate opportunity" to raise his constitutional claims at the state level. *Moore*, 442 U.S. at 430. There is a presumption that the state court is an adequate forum to raise constitutional issues. *Rose*, 2010 U.S. App. LEXIS 21779, at *11; *see also Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."). "The burden on this point rests on the federal plaintiff to

-17-

show 'that state procedural law barred presentation of [his] claims.'" *Pennzoil*, 481 U.S. at 14 (quoting *Moore*, 442 U.S. at 432). Abstention is centered on the basic premise that the "'accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Younger*, 401 U.S. at 45 (quoting *Fenner v. Boykin*, 271 U.S. 240, 244 (1926)).

Here, there is no indication that either the state disciplinary committee or the Kentucky Supreme Court would have refused to consider a constitutional challenge to one of the rules. *Cf. Middlesex*, 457 U.S. at 435 (explaining that the state ethics committee members are "constantly . . . called upon to interpret the state disciplinary rules" and that it is unlikely that "the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees"). Likewise, it is undisputed that the Kentucky Supreme Court is empowered to hear federal constitutional challenges. *See, e.g., Lexington-Fayette Urban County Gov't v. Johnson*, 280 S.W.3d 31, 33 (Ky. 2009) (ruling on plaintiff's challenge to an ordinance as "violating state and federal constitutional guarantees of equal protection"). More specifically, Kentucky case law makes clear that constitutional challenges to the Rules of Professional Conduct may be raised both in disciplinary proceedings and on appeal to the Kentucky Supreme Court. *See Ky. Bar Ass'n v. Waller*, 929 S.W.2d 181, 182 (Ky. 1996) (raising First Amendment defense to charge that attorney violated SCR 3.130(8.2)); *Ky. Bar Ass'n v. Heleringer*, 602 S.W.2d 165, 166 (Ky. 1980)

(First Amendment challenge to Kentucky ethics rule). There is no rule which would preclude Deters from raising his constitutional challenge at the state level. Therefore, the Court cannot conclude that there was no "adequate opportunity" for Deters to raise his constitutional claims in state court. *Moore*, 442 U.S. at 430.

Finally, Deters has not adequately shown any additional circumstances that would make abstention inappropriate. The plaintiff bears the burden of showing that bad faith, harassment, or exceptional circumstances are present that would prevent the Court from exercising abstention. *Thompson*, 526 F. Supp. 2d at 1277 (citing *Judice v. Vail*, 430 U.S. 327, 338 (1977)). "The standard for evaluating claims of bad faith and bias is difficult to meet." *Berger*, 775 F. Supp. at 1100. The Fifth Circuit explained that "the 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). An analysis of cases considering the exception reveals that Deters has not alleged facts sufficiently particular or serious to warrant an exception to the abstention doctrine.

In *Thompson*, for example, the attorney attempting to halt state bar proceedings included a litany of bad faith and harassment allegations. *See Thompson*, 526 F. Supp. 2d at 1277–81. The court began by noting that a prosecution is only brought in bad faith if brought without a reasonable expectation of success. *Id.* at 1277. The court explained that the actual subjective motivation of the prosecutor or bar counsel is central to the inquiry. *Id.* The question, then, the court noted was whether the bar, "at the time it instituted the disciplinary proceedings . . . was driven by a retaliatory motive or by some other nefarious

purpose." *Id.* (internal citations omitted). In that case, as in this one, the complaints were initiated by third parties — judges and lawyers. *Id.* The court found that when the bar committee merely acted upon third-party complaints it was required to investigate, its doing so could not be called retaliatory or in bad faith. *Id.* at 1278.

Further, the plaintiff in *Thompson*, like Deters here, centered his "bad faith" allegation on his assertion that the bar complaints were baseless and without merit. The court explained, "[A]n attorney involved in disciplinary proceedings cannot avoid *Younger/Middlesex* abstention by the simple expedient of maintaining (under oath or not) that the disciplinary charges against him lack merit." *Id.* (citing *Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999) (attorney facing investigation could not show bad faith by alleging that investigation was retaliation for her publicly documented (and truthful) allegations of impropriety in the Indiana courts). While Deters' continued assertions of his innocence are made with considerable volumestrength, those assertion do not demand a finding that the prosecutions against him are in bad faith.

Finally, the plaintiff in *Thompson* alleged a long list of procedural errors which he claimed exhibited bad faith on the part of bar investigators. *Thompson*, 526 F. Supp. 2d at 1277–81. He alleged that he was not given notice of the charges against him; that complaints against him were not filed under oath; that one investigator found some of the complaints to be without merit; that he was selectively prosecuted; and that he was denied discovery. *Id.* Even in light of all those accusations, the court found Thompson had failed to allege sufficiently serious charges to meet the bad faith exception. The Court finds the same here:

even taking the allegations in Deters' complaint as true, he has not alleged sufficient facts to justify ignoring *Younger*.

As another example, in *Berger* the district court considered whether an attorney had shown bad faith or harassment sufficient to meet the *Middlesex* exception. *Berger*, 775 F. Supp. at 1100. There, one of the three bar association investigators served as opposing counsel against the accused attorney in unrelated litigation. *Id.* Additionally, the attorney alleged selective prosecution because other attorneys with similar client disputes were not subject to investigation. *Id.* The court analyzed the "rare instances" where other courts had applied an exception, and found that the facts before it did not meet the "allegations of egregious bad faith and bias" that had occurred in other cases. *Id.* The only two instances cited involved (a) a pattern of harassing bar actions over the course of several years, *see Bishop v. State Bar of Texas*, 736 F.2d 292 (5th Cir. 1984), and (b) allegations which "painted a picture of pervasive racism and discriminatory treatment of blacks in the court system" and included illegal surveillance tactics, *Lewellen v. Raff*, 843 F.2d 1103, 1110, 1114 (8th Cir. 1988). *See Berger*, 775 F. Supp. at 1100–01. The facts of this case do not approach the seriousness of those two instances.

Like the plaintiffs in *Berger* and *Thompson*, Deters has failed to meet the high bar of showing bad faith or harassment sufficient to exclude this case from *Younger* abstention. The Court will not interfere with an ongoing state-court proceeding. Therefore, Deters' Fourteenth Amendment Due Process challenge and his as-applied First Amendment challenge are both barred. It is likely that *Younger* warrants dismissal of his suit altogether.

*See Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (holding that *Younger* "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts.").

### 3. Merits of a Facial Challenge to SCR 3.130(8.2)

The only remaining justification for Deters' preliminary injunction is his facial challenge to SCR 3.130(8.2). That rule states:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

SCR 3.130(8.2). In other words, lawyers cannot make false or reckless statements about judges. Deters argues that the rule is an impermissible restriction on speech that is protected by the First Amendment. [Record No. 1, p. 20] He contends that it "infringes upon constitutionally-protected free speech and association; because it chills an attorney's free speech by prohibiting an attorney from expressing any negative views on legal issues, judicial personnel, actions and political views; and because it does so through a vague and overly-broad prohibition." [*Id.*] As can be seen, however, the rule only prevents speech which the lawyer "knows to be false or [makes] with reckless disregard to its truth or falsity." SCR 3.130(8.2).

The Supreme Court has affirmed the oft-repeated statement, first made by Judge Cardozo, that "membership in the bar is a privilege burdened with conditions." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1066 (1991) (citing *In re Rouss*, 22 N.Y. 81, 84 (1917)).

-22-

Courts, therefore, may require attorneys to speak with greater care and civility than is the norm in other political debate. *See Florida Bar v. Went for It, Inc.*, 515 U.S. 618 (1995); *Gentile*, 501 U.S. at 1065–76; *see also Burton v. Statewide Griev. Comm.*, 48 Conn. Supp. 94, 103 (2002) ("Although a lawyer does not surrender her freedom of expression upon admission to the bar, once admitted, a lawyer must temper her criticisms in accordance with professional standards of conduct." (citing *U.S. Dist. Ct. for the E. Dist. of Wash. v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993)). The Kentucky Bar Association certainly has authority to regulate the unprotected speech of its members.

Further, the Supreme Court has consistently held that untrue speech is not protected by the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976); *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964). As the Supreme Court explained in *Garrison*, "[c]alculated falsehood falls into that class of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" 379 U.S. at 75 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). "Hence, the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Id.*; *see also Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995) ("[F]alse statements, made with reckless disregard of the truth, do not enjoy constitutional protection."). To the extent that SCR 3.130(8.2) only applies to *untrue speech*,

it applies to speech which is entitled to *no constitutional protection whatsoever*.  The rule's language mirrors the language used by numerous courts, each of which has held that speech characterized as "knowingly false" or "made with reckless disregard of its truth" is not constitutionally protected.  This Court concludes that the challenged language is neither vague nor overbroad.  Accordingly, Deters' facial challenge to SCR 1.130(8.2) is wholly without merit.  His position is not warranted by existing law and cannot be supported by any nonfrivolous argument for reversing existing law.

In summary, Deters has shown no chance of success on the merits.  His challenge to Commissioner Doheny's recusal decision is barred by *Rooker-Feldman*, while his constitutional challenges to the underlying proceeding are barred by *Younger/Middlesex* abstention.  Additionally, his facial challenge to SCR 3.130 lacks any merit whatsoever.  In cases like this, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  Because Deters has not shown any likelihood of succeeding, a preliminary injunction would be improper.  Nevertheless, the Court will consider the remaining preliminary injunction factors.

### C.    Other Preliminary Injunction Factors

Deters also fails to meet his burden on any of the additional preliminary injunction factors.  He has not shown that he will be irreparably harmed if Commissioner Doheny issues his recommendation.  In fact, under the Kentucky Supreme Court Rules, Commissioner Doheny's recommendation is only that: a recommendation.  Deters will have an opportunity to submit a brief and present oral argument to the Board before it considers his case.  *See*

SCR 3.370(1)–(3). The Board will make an independent decision pursuant to SCR 3.370(4)–(7). Thereafter, and if necessary, Deters will be given the opportunity to have that decision reviewed by the Kentucky Supreme Court. *See* SCR 3.370(8)–(10). The KBA will not take any action — nor will Deters receive any punishment — until the process is completed. Therefore, any harm that might occur by the issuing of a recommendation by Commissioner Doheny is clearly "reparable" through the extensive appeals process. See In re Cargill, Inc., 66 F.3d 1256, 1264 n. 10 (1st Cir. 1995) (noting that an erroneous recusal decision can be adequately addressed on appeal); *see also Bolin v. Story*, 225 F.3d 1234, 1243 (11th Cir. 2000) (finding that the ability to appeal and seek certiorari, plus ability to seek writ, meant there was no irreparable harm).

However, the Court cannot reach the same conclusion regarding the harm to the defendants if injunctive relief were entered. The same policy considerations that underlie *Younger* implicate this factor. In fact, the third prong of the *Middlesex* analysis examined the state's important interests. In short, the state has an interest in maintaining its justice system, assuring the professional conduct of the attorneys it licenses, and conducting efficient, timely reviews of that conduct without federal court interference. These important state interests would be greatly diminished by a federal court interjecting itself at any stage of the attorney discipline process. The Supreme Court properly oversees these functions, and states have a strong interest in maintaining their independent rights and processes in the absence of federal interference.

Finally, the public interest also weighs against issuing an injunction under the facts presented. The public has an interest in the prompt, efficient discipline of attorneys who operate outside ethical rules. *See Middlesex*, 457 U.S. at 434. "The ultimate objective of such control is '*the protection of the public*, the purification of the bar and the prevention of a re-occurrence.'" *Id.* (quoting *In re Baron*, 136 A.2d 873, 875 (N.J. 1975)) (emphasis added). Further, the general notion of "comity" demands "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. The public interest weighs in favor of leaving states' independent institutions independent.

## III. Conclusion

Deters' motion is wholly lacking in merit and, in many instances, completely contradictory to the entirety of case law. He has shown little likelihood of success on the merits and no irreparable harm. The defendants, however, would be injured by the issuing of an injunction. Finally, the public interest would not be served by the relief requested by Deters. Accordingly, it is hereby

**ORDERED** that Plaintiff Eric Deters' Motion for a Preliminary Injunction [Record No. 6] is **DENIED**.

This 14th day of January, 2011.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**